By the Court, Robertson, Ch. J.
From the evidence before us, and the findings of fact by the referee contained in his report, it appears that whatever right of possession the plaintiff had to the articles in question he derived from three different instruments, two of which only are mentioned in the complaint. The first was, (as appears from both the evidence and report,) an undated bill of sale, executed in February or March, 1861, by Waugh as security to the plaintiff for promissory notes amounting to $1200. The second, (as appears from the evidence alone,) was an assignment executed May 31, 1861, by Broekelbank, to the plaintiff*, of a mortgage to the former, executed on the 14th of the same month, to secure about $820. And the third, an assignment, in October following, (1861,) of a mortgage from Hull, (who appears to have been the original owner of such articles, and possessor of them when first placed on the premises,) to Messrs. Butteviek and Simpson, in November, 1857, not renewed on file until November, 1861. The amount due upon that mortgage at the time of its assignment, as appears in evidence, was $350.
*356 The articles in question do not appear to have been removed from the premises on which they were first placed since the time of the first occupation of the latter by Hull £ Howell, until the plaintiff took away some, and the defendant after selling the rest claimed title thereto by a repur- ■ chase from the vendees. Waugh had gone into possession of those premises on the 21st of March, 1861, before the ' lease to Hull Howell expired, and was himself dispossessed for non-payment of rent in August or September, 1861, leaving the articles in question behind him. He subsequently leased, (as stated in the referee’s report, but hired, as stated in the case,) with the defendant’s consent, those articles to Hull & Howell, who returned to the premises as tenants. The terms of such leasing or hiring do not appear in the case, and are unimportant. Hull Howell abandoned the possession of the premises and the articles in question in two months after they went in a second time."
The complaint does not allege any absolute ownership of the articles in question by either the plaintiff" or Waugh. The averment therein of the acquisition by the former of an interest therein by the latter’s assignment of his interest in such chattels, (previously stated to be that of a mortgagee only, a statement wholly unnecessary if he were owner,) was not equivalent to an allegation of such absolute ownership. Nor can the mere statement in the referee’s report, that the property was bought by Brocklebank for Waugh, on some sale thereof in March, 1861, by some sheriff", under some mortgage described only as being executed by Hull Howell jointly, be such an equivalent. The mortgage from Hull alone to Butterick and Simpson, dated in November, 1857, is found in such report to have been assigned in October, 1861, to the plaintiff", for the amount then due thereon, ($350,) and refiléd in November, 1861. That could not have occurred if a valid sale under such mortgage had taken place seven months previously. The mere suggestion of the referee, that the two mortgages were “pro- . bably ” the same, which is avowedly a mere conjecture, *357 may, therefore, be disregarded as not material on the question of ownership.
Even, therefore, if the defect of the complaint in not alleging ownership in the plaintiff or in Waugh, could be repaired or disregarded, there would still remain an absence of proof of any divesting of the title of Hull, (the original owner,) to the chattels in question. Waugh’s leasing them to his firm; or permitting them to use them, after the former had been dispossessed and he resumed possession, could not amount to a transfer of title by him to the former; particularly as there is no evidence of the payment of any thing for such use, or of any other of the terms of such leasing. Undoubtedly whatever interest Waugh then had, passed to the plaintiff by the bill of sale in February, 1862, as security for the notes held by the latter, but there is no evidence of what the interest of the former was. As such interest, therefore, is neither alleged in the complaint, nor found by the referee, nor does it appear by any evidence before us, the plaintiff cannot be considered entitled to recover for an injury to it by the defendant’s acts.
The only injury sustained by the plaintiff, therefore, was the loss of the amount due on the mortgage from Hull to Butterick and Simpson, assigned to him. He never was in possession of the articles in question; nor is this an action for their possession; he can only, therefore, recover a» damages the amount so due, $350, and interest thereon from October, 1861, the time it was assigned to him.
I do not perceive how the defendant could create any lien for any definite storage on the articles in question, without some consent, express or implied, of the owners of, or parties interested in, them. (Buxton v. Baughan, 6 C. P. 674.) Such consent cannot be implied from the mere presence of the articles there, as they were placed there by a tenant while in lawful possession under a lease. He might have a right to notify such parties to remove them or he would put them off of the premises, and in case of default do so, (Roulsten v. McClelland, 2 E. D. Smith, 60;) *358 but their presence there being either a matter of accident, or else a trespass, no contract could arise therefrom, unless by some other act of the parties interested. (Rivara v. Ghio, 3. E. D. Smith, 264.) If such a lien could be created, it would arise in every case of dispossession of a tenant who did not forthwith remove his property from the premises, and would virtually reproduce a right of distress for rent, under another name. Nor could such articles be retained as fixtures, being used for purposes of trade and manufacture. '
The plaintiff is therefore entitled to recover to the extent of the prejudice he has received by the conversion of the property in question by the defendant, and no more. The latter being still liable to the owner of the equity of redemption for his damages, if any, as to the residue of the value.
The judgment in this case must therefore be reversed and a new trial had, with costs to abide the event; unless the plaintiff .will consent to reduce the amount recovered to $350 and interest from October 9, 1861; and in such case no costs are given to either party on the appeal.